**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

NATALIE MITCHEM,  )
)
        Plaintiff,  )
)
v.  ) Civil Action No. _____
)
SLEEPCAIR, INC.  ) Complaint for Damages and
) Jury Demand
)
        Defendant.  )
)
)

## COMPLAINT

**I.**    **Nature of the case and parties to this action**.

1.    This is an action for legal and equitable relief to redress the deprivation of Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, ("Title VII"), codified at 42 U.S.C. §§ 2000e to 2000e-17; the Americans with Disabilities Act of 1990 ("ADA"), codified at 42 U.S.C. §§ 12112 to 12117; the Kansas Act Against Discrimination ("KAAD"), KS Statutes 44-1001 et. seq.; and for retaliation under both Title VII and the ADA.  Plaintiff seeks all available remedies from Defendant including compensatory and punitive damages, and equitable relief the Court deems warranted.

2.    Plaintiff Natalie Mitchem ("Plaintiff" or "Ms. Mitchem") resides at 7601 Goddard Street, Shawnee, KS 66214.  She is an African American female with the following disabilities: Antiphospholipid Syndrome, Attention Deficit Disorder (ADD), Anxiety and Depression.  The Defendant is Sleepcair, Inc. ("Defendant"), a corporation organized under the laws of the State of Kansas.  Defendant was at all relevant times doing business at 14333 W. 95th Street, Lenexa,

1

Kansas 66215 (Johnson County), the primary site of the alleged acts of discrimination. Defendant may be served at its registered agent in the State of Kansas.  Defendant is an "employer" within the meaning of Title VII, the ADA and KAAD.  At all relevant times, Defendant employed at least five hundred (500) employees.  At all relevant times, Defendant employed Plaintiff at its Lenexa, KS location.  The allegations in this Complaint are based on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

**II.    Jurisdiction and Venue.**

3.    The claims arise out of Plaintiff's employment with Defendant in its Lenexa, Kansas location.  Plaintiff alleges Defendant discriminated against her in violation of Title VII, the ADA, and the KAAD.  Plaintiff's claims therefore arise under federal law and supplemental state law, giving this Court jurisdiction under 28 U.S.C. §§ 1331 and 1367.  This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).  Further, Plaintiff has exhausted her administrative remedies by timely filing a charge with the Kansas Human Rights Commission ("KHRC") and subsequently receiving notice of her right to sue from the EEOC on September 22, 2020 (Exhibit A).  Details about the administrative proceedings are in Section IV, *infra*.

4.    Venue is proper in the District Court of Kansas because Plaintiff's claims arose within this District, and a substantial part of Defendant's acts and omissions giving rise to the claims occurred in this District.  Venue is also proper in this District because Defendant is a resident of this District and maintains its place of business in this District.  See 28 U.S.C. § 1391(b), (c).

**III.      Statement of the Claim.**

5.      Ms. Mitchem began working at Sleepcair, Inc. on or about August 4, 2015.  Her job title was Respiratory Therapist.  The job was sometimes generically referred to as Healthcare Specialist.

6.      Ms. Mitchem experienced discrimination at the hands of Defendant within 1-2 months of her first day on the job.  The discriminatory incidents represented a continuing violation up until her unlawful termination on March 14, 2019.

7.      Following is an accounting of Ms. Mitchem's claims for sexual harassment, race discrimination, disability discrimination and retaliation, culminating in Ms. Mitchem's unlawful termination on March 14, 2019.  These series of incidents amount to a continuing pattern of discriminatory acts.

*Sexual harassment and gender discrimination.*

8.      On the evening of December 14, 2018, Ms. Mitchem, along with approximately 15-20 other employees, attended a company function at a bar named Llywelyn's Pub in Lees Summit, MO.

9.      Center Manager Ashley Graf, after having an unspecified number of cocktails, made an unwanted sexual advance toward Plaintiff, when Plaintiff walked into the bar the evening of the 14th.  Ms. Graf kissed Plaintiff on the lips.

10.      All the other employees, including at least one supervisor (Area Manager Gabriel Medina), witnessed the incident.  A number of other bar patrons witnessed the incident as well.

11.      Mr. Medina did nothing to intervene.

12.     Ms. Mitchem immediately protested her supervisor kissing her on the lips by telling her to stop.  Ms. Graf did not stop.  Ms. Graf kept pursuing Ms. Mitchem, saying, "Kiss me, kiss me, kiss me."

13.     Ms. Graf only stopped when Ms. Mitchem walked away from Ms. Graf.

14.     The unwanted sexual advances from her supervisor humiliated and disgusted Ms. Mitchem.

15.     Later that same evening, the gathering moved to another bar by the name of Bricks, in Lees Summit.  After entering the bar, Ms. Graf resumed with her advances toward Ms. Mitchem.  Ms. Graf approached Ms. Mitchem and started sexually "grinding" her buttocks in Ms. Mitchem's groin.  Ms. Mitchem walked away in disgust.

16.     At various times throughout 2017 and 2018, Ms. Graf would touch Ms. Mitchem in inappropriate ways.  Specifically, Ms. Graf would approach a sitting Ms. Mitchem and would rub Ms. Mitchem's shoulders and back, as well as the back of Ms. Mitchem's neck.

17.     This touching was unwanted, unwelcome and offensive.

18.     At various times throughout 2016-2-18, Supervisor Nicole Bradley would touch Ms. Mitchem.  Specifically, Ms. Bradley would consistently rub Ms. Mitchem's shoulders while standing in back of a seated Ms. Mitchem, who would protest each time it happened.

19.     This touching was unwanted, unwelcome and offensive.

*Race Discrimination.*

20.     Starting in late 2017 and continuing until the date of her termination, Ms. Mitchem observed that Ms. Graf scheduled black employees differently from the white employees.

21.     Ms. Graf also assigned different duties to black employees than she did to white employees.  For example, Ms. Graf made Ms. Mitchem and another black employee, Kendra Coulter clean equipment.

22.     Ms. Graf did not schedule white employees to clean equipment.

23.     Supervisors Nicole Bradley, Erica Ashby and Ashley Graf were all harsher on blacks when dishing out discipline.  When white employees were observed to have made a mistake, little or nothing happened.

24.     By way of example, approximately April 2018, Ms. Graf, herself, (who is white) got into an argument with a patient in a room crowded with other patients.  The two got into an argument in front of everyone, and Ms. Graf yelled, "well, you don't have to be a fucking bitch!"  This infraction resulted in no write-up or discipline whatsoever.  Ms. Graf's supervisor, Nicole Bradley, actually promoted Ms. Graf soon soon after using such language with a patient.

25.      In early 2018, Clinical Supervisor Erica Ashby (who is white), called a nurse from St. Luke's in Lees Summit a "stupid bitch," resulting in the loss of business from that particular client.  No disciplinary action resulted for Ms. Ashby.

26.     From approximately 2017-2019, Supervisor Allen Curtis (who is white) regularly made racially discriminatory comments in the workplace.

27.     For example, he regularly referred to a black employee named Treva Bruce as "Lionel Richie."  Ms. Bruce wore her natural hair, which was apparently what Mr. Curtis was referring to.   Mr. Curtis also used to refer to Ms. Bruce's children as "Bebe's kids."

28.     In or about December 2017, Plaintiff's house was broken into.  Mr. Curtis stated it was because Ms. Mitchem lived "in a ghetto."

29.     When Plaintiff made deliveries or visited patients in affluent neighborhoods in the cities of Butler, Harrisonville and Lees Summit, she was occasionally pulled over by the police. Plaintiff reported these incidents, to which Mr. Curtis replied, "You're not supposed to be in those neighborhoods," implying that black people should not go there.

30.     Mr. Curtis also stated about Plaintiff's wig: "You change your hair more than you change your underwear."

31.     On or about September 2, 2015, Mr. Curtis commented on Plaintiff's short hair style and another black employee's short hair (Treva Bruce).  Mr. Curtis stated, "We have Prince and Lionel Richie here."

32.     Neither Mr. Curtis, Ms. Graf, nor Ms. Ashby received discipline for the above infractions.

33.     Other white employees occasionally had infractions, but were never written up or disciplined.

34.     Yet Defendant terminated Plaintiff for a pretextual reason: for supposedly using inappropriate language in the workplace.

35.     As discussed above, Plaintiff's supervisors regularly used profanity and inappropriate language; yet they were not disciplined or terminated.  The use of profanity was an accepted practice in that particular workplace – except for Ms. Mitchem.

36.     Right before Ms. Mitchem's termination, on or about March 5, 2019, Ms. Mitchem complained to Ms. Graf about the fact that management unevenly and unfairly gave more work to black employees than whites and generally treated black employees worse than white employees.

6

37.    Ms. Mitchem not only verbally complained; she also sent a text message to Ms. Graf later that night, the evening of March 5, 2019.

38.    One of the reasons Ms. Mitchem sent the text to Ms. Graf was to follow up on her previous complaints of race discrimination – this time at the hands of a customer.

39.    The next day, on or about March 6, 2019, Ms. Graf showed the text to several others in the office, stating Ms. Mitchem was diagnosed with depression and anxiety and on placed on medication.

40.    Ms. Graf rhetorically and sarcastically asked these other employees whether Ms. Mitchem had "taken her meds."  Besides the fact that this was a violation of Federal privacy laws, this was also in retaliation of Ms. Mitchem having asserting her rights under the ADA.

41.    On or about March 7, 2019, Supervisor Gabriel Medina used the company credit card to order lunch for the entire office.  Mr. Medina ordered lunch for everyone in the office but Ms. Mitchem.

42.    On or about March 13, 2019, Ms. Mitchem sent an email to Ms. Graf, and courtesy copied Gabriel Medina (Ms. Graf's supervisor).  The purpose of the email was for Plaintiff concerns about setting up an Astral Ventilator, a form of life support for patients.

43.    Ms. Graf terminated Ms. Mitchem's employment March 14, 2019.  Ms. Graf cited the language used in the March 5th text as the reason for the termination.

44.    Ms. Graf's stated reason for Ms. Mitchem's termination was pretextual, as the use of strong language was common in that particular workplace.

45.    In late March 2019, Ms. Mitchem applied for unemployment benefits with the Kansas Department of Labor.

46.     Defendant submitted false information to the Kansas Department of Labor.  Specifically, Defendant submitted a falsified disciplinary write-up of Plaintiff.

47.     Plaintiff had never seen or received the write-up prior to applying for unemployment benefits.

*Disability Discrimination.*

48.     Plaintiff had the following disabilities at all relevant times: Antiphospholipid Syndrome, Attention Deficit Disorder (ADD), Anxiety and Depression.

49.     These disabilities substantially limit the following major life activities: walking, standing, lifting, sitting, concentrating, focusing, speaking, and communicating.

50.     Defendant knew about Plaintiff's disabilities.

51.     Plaintiff, at all relevant times, was qualified to perform the essential functions of her job as Respiratory Therapist.

52.     On multiple occasions in 2018, Plaintiff asked supervisor Gabriel Medina for a reasonable accommodation of a transfer to the Blue Springs, MO office, to escape the race discrimination, and to prevent exacerbation of Plaintiff's anxiety and depression.

53.     Plaintiff's requests for this accommodation was reasonable, since other employees were sometimes transferred to other offices.

54.     Mr. Medina summarily denied all of Plaintiff's requests for a reasonable accommodation.

## IV.  EEOC ADMINISTRATIVE PROCEEDINGS

55.     Plaintiff has exhausted her administrative remedies.  On March 27, 2019,  Plaintiff timely executed and filed a Charge of Discrimination with the KHRC, (Docket No. 40967-19; EEOC

Duel Filed Charge No. 28D-2019-00512). On April 2, 2019, the KHRC acknowledged receipt of the charge.  See Exhibit A attached hereto.

56.     On September 16, 2020, the EEOC issued a Notice of Right to Sue letter to Plaintiff thereby allowing her to go forward with filing the instant suit against Defendant.  Plaintiff received the Notice on September 22, 2020.  See Exhibit B,

**COUNT 1**
**Gender Discrimination – Hostile Environment – Title VII**

57.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

58.     Plaintiff is a female who was subjected to intentional discrimination by Defendant because of her sex/gender.

59.     Defendant subjected Plaintiff to a hostile work environment because it allowed its supervisors to inappropriately touch and kiss Plaintiff.

60.     The touching and kissing were unwelcome.

61.     The inappropriate, offensive touching and kissing was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive environment and ultimately led to Defendant terminating Plaintiff, despite her qualifications and performance.

62.     Defendant's touching and kissing of Plaintiff were outrageous, intentional, willful, and showed an evil motive or reckless indifference or conscious disregard for Plaintiff's rights, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

63.     As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully denied her, as well as severe emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count I of her Complaint, for a finding that she has been subjected to unlawful gender discrimination in violation of Title VII, for an award of compensatory and punitive damages, for her reasonable attorneys' fees, costs, pre- and post judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

**COUNT II**
**Race Discrimination – Racial Harassment - Title VII**

64.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

65.     Plaintiff is an African American who was subjected to a hostile environment at the hands of Defendant.

66.     Defendant's acts and omissions unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile and offensive work environment which ultimately led to her unlawful termination.

67.     Defendant's disparate assignment of work based on race, combined with inflammatory name calling and discriminatory disciplinary practices based on race created a hostile work environment that ultimately led to Plaintiff's termination.

68.     Defendant's acts and omissions were outrageous, intentional, willful, and showed an evil motive or reckless indifference or conscious disregard for Plaintiff's rights, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

69.     As a result of Defendant's acts and omissions, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully denied her, as well as  severe emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count II of her Complaint, for a finding that she has been subjected to unlawful race discrimination in violation of Title VII, for an award of compensatory and punitive damages, for her reasonable attorneys' fees, costs, pre- and post judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

## COUNT III
### Retaliation – Title VII

70.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

71.     Plaintiff opposed and resisted her supervisor's sexual advances and told her to stop, despite the fact that the supervisor persisted in this behavior.

72.     Plaintiff complained about the racial harassment to her supervisor.

73.     Plaintiff's opposition to and reports of discrimination constituted protected activities.

74.     By reason of Plaintiff's opposition and reports, Defendant retaliated against Plaintiff ultimately terminating Plaintiff's employment.

75.     Plaintiff's opposition to and reports of discrimination were a motivating factor for Defendant's actions.

76.     The actions Defendant took against Plaintiff might well have persuaded a reasonable person in the same or similar circumstances of Plaintiff to not report or to not oppose workplace discrimination.

77.     Defendant would not have taken material adverse action against Plaintiff but for Plaintiff's act of opposing and reporting unlawful discrimination in the workplace.

78.     Plaintiff's opposition to and reports of unlawful discrimination in the workplace were a determining factor in Defendant's decision to retaliate against her in the manner alleged herein.

79.     Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and the rights of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

80.     As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count III of her Complaint, for a finding that she has been subjected to unlawful retaliation under Title VII, for an award of compensatory and punitive damages, for her reasonable attorneys' fees, costs, pre- and post judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

## COUNT IV
### Disability Discrimination - ADA

81.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

82.     Plaintiff had, at all relevant times, the following disabilities: Antiphospholipid Syndrome, Attention Deficit Disorder (ADD), Anxiety and Depression.

83.     These disabilities substantially limited the following major life activities:  walking, standing, lifting, sitting, concentrating, focusing, speaking, and communicating.

84.     Defendant knew about Plaintiff's disabilities.

85.     Plaintiff, at all relevant times, was qualified to perform the essential duties of a
Respiratory Therapist.

86.     Plaintiff, at all relevant times, possessed the requisite skill, experience, education and job-
related requirements of the position.

87.     On multiple occasions throughout 2018, Plaintiff asked Mr. Gabriel Medina for a
reasonable accommodation of a transfer to the Blue Springs, MO office, not only to escape the
race discrimination, but to prevent further exacerbation of Plaintiff's anxiety and depression.

88.     The accommodation request was reasonable.

89.     Each time, Defendant summarily denied the requests without the proper interactive
process.

90.     Plaintiff's disabilities, in particular her depression and anxiety, factored into Defendant's
decision to terminate her.

91.     Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or
reckless indifference or conscious disregard for Plaintiff's rights and the rights of others, and
therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

92.     As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer
damages, including lost wages, benefits, and other monies wrongfully taken from her, and
emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count IV of
her Complaint, for a finding that she has been subjected to unlawful disability discrimination in
violation of the ADA, for an award of compensatory and punitive damages, for her reasonable
attorneys' fees, costs, pre- and post judgment interest as allowed by law, and for such other and
further relief as this Court deems just and proper, including equitable relief.

## COUNT V
### Gender Discrimination – KAAD

93.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

94.     Plaintiff is a female who was subjected to intentional discrimination by Defendant because of her sex/gender.

95.     Defendant subjected Plaintiff to a hostile work environment because it allowed one of its supervisors to inappropriately touch and kiss Plaintiff.

96.     The touching and kissing were unwelcome.

97.     The inappropriate, offensive touching and kissing was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive environment and ultimately led to Defendant terminating Plaintiff, despite her qualifications and performance.

98.     As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully denied her, as well as severe emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count V of her Complaint, for a finding that she has been subjected to unlawful gender discrimination in violation of the KAAD, for an award of back pay, compensatory damages, and for such other and further relief as this Court deems just and proper, including equitable relief.

## COUNT VI
### Disability Discrimination - KAAD

99.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

14

100.    Plaintiff had, at all relevant times, the following disabilities: Antiphospholipid Syndrome, Attention Deficit Disorder (ADD), Anxiety and Depression.

101.    These disabilities substantially limited the following major life activities:  walking, standing, lifting, sitting, concentrating, focusing, speaking, and communicating.

102.    Defendant knew about each one of Plaintiff's disabilities.

103.    Plaintiff, at all relevant times, was qualified to perform the essential duties of a Respiratory Therapist.

104.    Plaintiff, at all relevant times, possessed the requisite skill, experience, education and job-related requirements of the position.

105.    On multiple occasions throughout 2018, Plaintiff asked Mr. Gabriel Medina for a reasonable accommodation of a transfer to the Blue Springs, MO office, not only to escape the race discrimination, but to prevent further exacerbation of Plaintiff's anxiety and depression.

106.    The accommodation request was reasonable.

107.    Each time, Defendant summarily denied the requests without the proper interactive process.

108.    Plaintiff's disabilities, in particular her depression and anxiety, factored into Defendant's decision to terminate her.

109.    As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count VI of her Complaint, for a finding that she has been subjected to unlawful disability discrimination in

violation of the KAAD, for an award of back pay, compensatory damages, and for such other and further relief as this Court deems just and proper, including equitable relief.

**<u>COUNT VII</u>**
**Race Discrimination – KAAD**

110.    Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

111.    Plaintiff is an African American who was subjected to a hostile environment at the hands of Defendant.

112.    Defendant's acts and omissions unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile and offensive work environment which ultimately led to her unlawful termination.

113.    Defendant's disparate assignment of work based on race, combined with inflammatory name calling and discriminatory disciplinary practices based on race created a hostile work environment that ultimately led to Plaintiff's termination.

114.    As a result of Defendant's acts and omissions, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully denied her, as well as  severe emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count VII of her Complaint, for a finding that she has been subjected to unlawful disability discrimination in violation of the KAAD, for an award of back pay, compensatory damages, and for such other and further relief as this Court deems just and proper, including equitable relief.

**DEMAND FOR JURY TRIAL AND DESIGNATION OF LOCATION**

Plaintiff demands a trial by jury of all issues so triable in this action.  Plaintiff designates Kansas

City, KS as the location for a jury trial.

Respectfully submitted this 11th day of December, 2020.

THOMPSON LAW OFFICES, LLC


/s/ *Kevin V. Thompson, Sr.*
_____
Kevin V. Thompson, Sr.
Attorney for Plaintiff, KS Bar No. 21110
Thompson Law Offices, LLC
1504 Gatewood St.
Leavenworth, KS 66048
913-704-5737
Kevin.v.thompson@outlook.com



/s/ Natalie Mitchem
_____
Natalie Mitchem, Plaintiff

17

## CERTIFICATE OF SERVICE

I hereby certify that on this day, 11 December 2020, a copy of the foregoing was sent to the following:


U.S. District Court
District of Kansas
500 State Ave
Kansas City, KS 66101


Sleepcair, Inc.
14333 W 95th St Lenexa, KS 66215


Registered Agent:
The Corporation Company, Inc.
112 SW 7TH St Suite 3C, Topeka, KS 66603


/s/ *Kevin V. Thompson*
_____
Kevin V. Thompson, Sr.
Attorney for Plaintiff, KS Bar No. 21110
Thompson Law Offices, LLC
1504 Gatewood St.
Leavenworth, KS 66048
913-704-5737
Kevin.v.thompson@outlook.com