# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

NATALIE MITCHEM,

      **Plaintiff,**

v.

SLEEPCAIR, INC.,

      **Defendant.**

**Case No. 20-2627-DDC-GEB**

## MEMORANDUM AND ORDER

Plaintiff Natalie Mitchem brings this lawsuit against her former employer, defendant Sleepcair, Inc., alleging sex, race, and disability discrimination and retaliation claims.  Defendant has filed a Motion to Dismiss (Doc. 8) plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6).  For the following reasons, the court grants defendant's motion in part and denies it in part.

## I.  Factual Background

The following facts come from plaintiff's Complaint (Doc. 1).  The court accepts plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to [her], and draw[s] all reasonable inferences from the facts" in her favor.  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (citation omitted).

Plaintiff "is an African American female[.]"[1]  Doc. 1 at 1 (Compl. ¶ 2).  Plaintiff has "the following disabilities:  Antiphospholipid Syndrome, Attention Deficit Disorder (ADD), Anxiety and Depression."  *Id.*

---

[1]  Plaintiff's filings consistently describe her racial identity using the phrase "African American."  *See* Doc. 1 at 1, 10 (Compl. ¶¶ 2, 65); *see also* Doc. 11 at 2.  Also, plaintiff describes her coworkers as black.  *See* Doc. 1 at 5 (Compl. ¶¶ 21, 23, 27); *see also* Doc. 11 at 6.  The court adopts plaintiff's terminology, describing her own racial identity as African American and her coworkers as black.

Plaintiff began working for defendant around August 4, 2015.  *Id.* at 3 (Compl. ¶ 5).

Plaintiff's job title was "Respiratory Therapist[,]" but sometimes it was referred to as

"Healthcare Specialist."  *Id.*  Plaintiff alleges that she endured "sexual harassment, race

discrimination, disability discrimination and retaliation," during her employment with defendant,

"culminating in [her] unlawful termination on March 14, 2019."  *Id.* (Compl. ¶ 7).  Plaintiff's

Complaint groups her factual allegations into the types of discrimination or retaliation that she

claims defendant deployed against her.  The court follows plaintiff's convention, below.

### Plaintiff's Allegations of Sexual Harassment and Sex Discrimination

Plaintiff alleges that two of defendant's supervisors sexually harassed her during her

employment.  *Id.* at 3–4 (Compl. ¶¶ 9–19).[2]  Center Manager Ashley Graf made unwanted sexual

advances toward plaintiff on December 14, 2018.  *Id.* at 3 (Compl. ¶¶ 8, 9).  Specifically,

plaintiff alleges Ms. Graf kissed her on the lips at a "company function" at a bar.  *Id.*  Plaintiff

told Ms. Graf to stop kissing her, but she refused.  *Id.* at 4 (Compl. ¶ 12).  Instead, Ms. Graf kept

pursuing plaintiff, telling her to "Kiss me, kiss me, kiss me."  *Id.*  Other employees, including

another supervisor, Area Manager Gabriel Medina, witnessed the incident.  *Id.* at 3 (Compl. ¶

10).  Mr. Medina did nothing to intervene.  *Id.* (Compl. ¶ 11).

Later that evening, the employees moved the gathering to another bar.  *Id.* at 4 (Compl. ¶

15).  At that bar, Ms. Graf "resumed with her advances toward" plaintiff.  *Id.*  Ms. Graf

"approached [plaintiff] and started sexually 'grinding' her buttocks in [plaintiff's] groin."  *Id.*

---

[2]     Plaintiff's Complaint mentions three supervisors in her allegations about sexual harassment: Center Manager Ashley Graf, Supervisor Nicole Bradley, and Area Manager Gabriel Medina.  Doc. 1 at 3, 4 (Compl. ¶¶ 9, 10, 18).  Plaintiff alleges Ms. Graf and Ms. Bradley sexually harassed her, and that Mr. Medina did not intervene to prevent the alleged harassment.  Doc. 1 at 3, 4 (Compl. ¶¶ 9, 10, 18).

Throughout 2017 and 2018, Ms. Graf would "touch [plaintiff] in inappropriate ways" by rubbing her shoulders, back, and neck.  *Id.* (Compl. ¶ 16).  Plaintiff found the touching "unwanted, unwelcome and offensive."  *Id.* (Compl. ¶ 17).

Also, throughout 2016 to 2018, Supervisor Nicole Bradley "consistently" rubbed plaintiff's shoulders while plaintiff was seated and Ms. Bradley was standing behind her.  *Id.* (Compl. ¶ 18).  Plaintiff "would protest each time it happened."  *Id*.  Plaintiff found the touching "unwanted, unwelcome and offensive."  *Id.* (Compl. ¶ 19).

### *Plaintiff's Allegations of Race Discrimination*

Plaintiff observed that Ms. Graf "scheduled black employees differently from the white employees."  *Id.* (Compl. ¶ 20).  Also, Ms. Graf "assigned different duties to black employees than she did to white employees."  *Id.* at 5 (Compl. ¶ 21).  Ms. Graf assigned plaintiff and another black employee the task of cleaning equipment but she never scheduled white employees to clean equipment.  *Id*. (Compl. ¶¶ 21, 22).

Supervisors Nicole Bradley, Erica Ashby, and Ashley Graf disciplined black employees more harshly than they disciplined white employees.  *Id*. (Compl. ¶ 23).  Ms. Bradley never disciplined Ms. Graf (who is white) after Ms. Graf got into an argument and yelled an obscenity at a patient.  *Id*. (Compl. ¶ 24).  Instead, Ms. Bradley promoted Ms. Graf not long after that incident.  *Id.*

In early 2018, Ms. Ashby (who is white) called a client's nurse a "stupid bitch."  *Id*. (Compl. ¶ 25).  Because of this incident with Ms. Ashby, the client stopped doing business with defendant.  *Id.*  But defendant never disciplined Ms. Ashby for the incident.  *Id.*

From 2017 to 2019, Supervisor Allen Curtis (who is white) "regularly made racially discriminatory comments in the workplace."  *Id*. (Compl. ¶ 26).  Mr. Curtis referred to a black

employee as "Lionel Richie" and her children as "Bebe's kids." *Id*. (Compl. ¶ 27). Mr. Curtis told plaintiff that her house was burglarized because she lived "in a ghetto[,]" and that police pulled her over in affluent neighborhoods because she wasn't "supposed to be in those neighborhoods, implying that black people should not go there." *Id*. at 5–6 (Compl. ¶¶ 28, 29) (internal quotation marks omitted). Mr. Curtis also commented on plaintiff's wig, saying that plaintiff changed her "hair more than [she] change[d] [her] underwear." *Id*. at 6 (Compl. ¶ 30). And, he commented on plaintiff and another employee's hair styles by saying "We have Prince and Lionel Richie here." *Id.* (Comp. ¶ 31). Defendant never disciplined Mr. Curtis for his conduct. *Id*. (Compl. ¶ 32).

On March 14, 2019, defendant terminated plaintiff's employment for using inappropriate language in the workplace. *Id.* at 6–7 (Compl. ¶¶ 34, 43). Other white employees regularly used profanity and inappropriate language at work, but defendant never terminated their employment. *Id*. at 6 (Compl. ¶ 35).

Shortly before plaintiff's termination, on March 5, 2019, plaintiff verbally complained to Ms. Graf about defendant assigning "more work to black employees than whites" and treating "black employees worse than white employees." *Id.* (Compl. ¶ 36). Plaintiff texted Ms. Graf to follow up "on her previous complaints of race discrimination—this time at the hands of a customer." *Id*. at 7 (Compl. ¶¶ 37–38). The following day, Ms. Graf showed plaintiff's text message to other employees, told them that plaintiff was diagnosed with depression and anxiety, and asked the other employees whether plaintiff had "taken her meds." *Id.* (Compl. ¶¶ 39–40). Around March 7, 2019, Mr. Medina ordered lunch for the entire office but excluded plaintiff. *Id*. at 7 (Compl. ¶ 41).

### *Plaintiff's Allegations of Disability Discrimination*

Defendant knew that plaintiff had several disabilities including Antiphospholipid Syndrome, Attention Deficit Disorder (ADD), anxiety, and depression. *Id*. at 8 (Compl. ¶¶ 48, 50). Several times in 2018, plaintiff asked Mr. Medina for a "transfer to the Blue Springs, [Missouri] office, to escape the race discrimination, and to prevent exacerbation of [p]laintiff's anxiety and depression." *Id*. (Compl. ¶ 52). Plaintiff asserts that her transfer requests were "reasonable, since other employees were sometimes transferred to other offices." *Id.* (Compl. ¶ 53). But Mr. Medina denied plaintiff's transfer requests. *Id.* (Compl. ¶ 54).

Also, as discussed above, on March 6, 2019, Ms. Graf showed other employees a text message that plaintiff had sent to Ms. Graf. *Id.* at 7 (Compl. ¶¶ 37–39). It complained about race discrimination. *Id.* Ms. Graf told the employees that plaintiff was diagnosed with depression and anxiety, and asked the other employees whether plaintiff had "taken her meds." *Id.* (Compl. ¶¶ 39–40).

### *Plaintiff's Allegations of Retaliation*

Plaintiff "opposed and resisted her supervisor's sexual advances[.]" *Id.* at 11 (Compl. ¶ 71). Also, plaintiff complained about racial harassment to her supervisor. *Id.* (Compl. ¶ 72); *see also id.* at 6–7 (Compl. ¶¶ 36–38) (alleging that plaintiff complained to Ms. Graf about race discrimination); *id.* at 8 (Compl. ¶ 52) (alleging that plaintiff asked for a transfer to another office "to escape the race discrimination"). Plaintiff alleges that defendant "retaliated against [her] ultimately terminating [her] employment" because of her "opposition [to] and reports" of discrimination. *Id*. at 11 (Compl. ¶ 74).

*Plaintiff's Charges with the EEOC and KHRC*

On March 27, 2019, plaintiff filed a Charge of Discrimination with the Kansas Human

Right Commission ("KHRC").  *Id.* at 8–9 (Compl. ¶ 55).  The Charge was dually-filed with the

Equal Employment Opportunity Commission ("EEOC").  *Id.*  On April 2, 2019, the KHRC

acknowledged receipt of the Charge.  *Id.*; *see also* Doc. 1-1 at 2.[3]  Plaintiff's Charge of

Discrimination alleged sex, race, disability discrimination and retaliation.  Doc. 1-1 at 1.  On

September 16, 2020, the EEOC issued a Notice of Right to Sue letter to plaintiff.  Doc. 1 at 9

(Compl. ¶ 56); *see also* Doc. 1-2.

## II.     Legal Standard

Fed. R. Civ. P. 12(b)(6) allows a party to move the court to dismiss an action for failing

"to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint

to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing

*Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the

factual allegations in the complaint are true, but it is "'not bound to accept as true a legal

conclusion couched as a factual allegation.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  And,

while this pleading standard doesn't require "'detailed factual allegations,'" it demands more

---

[3]       The court can consider the two exhibits attached to plaintiff's Complaint when deciding
defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  *See Tal v. Hogan*, 453 F.3d 1244, 1264
n.24 (10th Cir. 2006) ("Exhibits attached to a complaint are properly treated as part of the pleadings for
purposes of ruling on a motion to dismiss." (citation omitted)).

than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

a cause of action'" which, as the Supreme Court explained, "'will not do.'"  *Id.* (quoting

*Twombly*, 550 U.S. at 555).

Plaintiff contends that "[a] complaint cannot be dismissed under Rule 12(b)(6) 'unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief.'"  Doc. 11 at 2 (quoting *Conley v. Gibson*, 355 U.S. 41, 45 (1957)).

But, this is not the law.  The Supreme Court has abrogated *Conley*, explaining that its "'no set of

facts' language" does not describe "the minimum standard of adequate pleading to govern a

complaint's survival."  *Twombly*, 550 U.S. at 562–63 (quoting *Conley*, 355 U.S. at 45–46).

Instead, at the pleading stage, allegations must include facts plausibly suggesting that the

"'pleader is entitled to relief.'"  *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).  The

court thus applies the *Twombly* standard to defendant's motion, below.

## III.   Analysis

Plaintiff's Complaint asserts seven claims in separately numbered Counts:  (1) sex

discrimination and hostile work environment violating Title VII of the Civil Rights Act of 1964

(Count I); (2) race discrimination and racial harassment violating Title VII (Count II); (3) Title

VII retaliation (Count III), (4) disability discrimination violating the Americans with Disabilities

Act Amendments Act ("ADAAA")[4] (Count IV); (5) sex discrimination violating the Kansas Act

---

[4]       Plaintiff's Complaint asserts a claim under "the Americans with Disabilities Act of 1990
('ADA')[.]"  Doc. 1 at 1 (Compl. ¶ 1).  The ADA Amendments Act of 2008 ("ADAAA") amended the
ADA and "went into effect on January 1, 2009."  *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1303–04 n.1
(10th Cir. 2017) (citation omitted).  Here, the "events that form the basis for [plaintiff's] disability-related
claims occurred after this date; therefore, the ADAAA is technically applicable here."  *Id.*  So, the court
"refer[s] to [plaintiff's] disability-related claims . . . as claims alleging violations of the ADAAA."  *Id.*
Also, as our Circuit has noted, the 2008 amendments "primarily" revised "the ADA's definition of
'disability.'"  *Id.*  But here, these "revisions are not material to the disability issues that" plaintiff's claims
present.  *Id.*  So, the court "freely rel[ies] on authorities prior to ADAAA's effective date that apply and
construe the ADA, insofar as they are relevant."  *Id.*

Against Discrimination ("KAAD") (Count V); (6) disability discrimination violating the KAAD (Count VI); and (7) race discrimination violating the KAAD (Count VII). Defendant's Motion to Dismiss asks the court to dismiss each of plaintiff's claims.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). The ADAAA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Also, the ADAAA requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship" on the employer's business. 42 U.S.C. § 12112(b)(5)(A). And, the KAAD prohibits employers from "discriminat[ing] against [a] person in compensation or in terms, conditions or privileges of employment" because of the person's "race, religion, color, sex, disability, national origin or ancestry[.]" Kan. Stat. Ann. § 44-1009(a).

Courts analyze KAAD discrimination claims using the same analysis governing federal Title VII and ADAAA claims. *See Singh v. Cordle*, 936 F.3d 1022, 1037, 1042 (10th Cir. 2019) (applying the same burden-shifting framework to KAAD and Title VII discrimination and retaliation claims (citing *Woods v. Midwest Conveyor Co., Inc.*, 648 P.2d 234, 239 (Kan. 1982) (further citations omitted)); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 n.3 (10th Cir. 1997) ("The same standards and burdens" from federal law "apply in establishing a claim based on . . .

disability under the Kansas Act Against Discrimination." (citing *Woods*, 648 P.2d 238–39));

*Duffey v. Bd. of Comm'rs of Butler Cnty.*, No. 08-1186-WEB, 2011 WL 1118585, at *9–10 (D.

Kan. Mar. 25, 2011) (analyzing KAAD and Title VII sex discrimination claims together);

*Schweitzer-Reschke v. Avnet, Inc.*, 874 F. Supp. 1187, 1192 n.3 (D. Kan. 1995) (Lungstrum, J.)

("Kansas state courts interpreting the anti-discrimination provisions of the KAAD have applied

the same analyses as those used in Title VII cases in federal court and look to federal court

opinions as persuasive authority regarding comparable issues pursuant to the KAAD." (citation

omitted)).

    Neither party here argues that the court should apply a different standard to the KAAD

claims.  To the contrary, both parties' briefs cite and apply federal case law when discussing

plaintiff's KAAD claims.  And, defendant notes that courts "regularly" apply the same standard

to Title VII and KAAD claims.  Doc. 9 at 9 n.1 (citing *U.S. ex rel. Feaster v. Dopps Chiropractic

Clinic*, No. 13-1453-EFM-KGG, 2015 WL 6801829, at *6 n.36 (D. Kan. Nov. 5, 2015)).  So,

following the case law's guidance and the convention suggested by the parties, the court applies

the federal Title VII and ADAAA standards to plaintiff's KAAD claims.

    The court now turns to defendant's dismissal arguments against each of plaintiff's

discrimination and retaliation claims.

### A.  Sex Discrimination and Hostile Work Environment Claims (Counts I & V)

    *First*, defendant argues that plaintiff has failed to allege plausible sex discrimination and

hostile work environment claims under either Title VII or the KAAD because she hasn't alleged

that she was subjected to severe or pervasive conduct on the basis of her sex.

    Title VII's reference to "terms, conditions, or privileges of employment" is not limited to

economic or tangible discrimination—it also includes a prohibition against requiring employees

to work in a discriminatorily hostile or abusive environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)).  An employer thus violates Title VII by maintaining a workplace "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Meritor*, 477 U.S. at 65, 67).

To state a plausible Title VII claim based on sexual harassment, plaintiff must allege facts supporting a plausible finding or inference:  "(1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Morris v. City of Colo. Springs*, 666 F.3d 654, 663 (10th Cir. 2012).[5] Here, defendant just challenges the second element of a sexual harassment claim.[6]  She argues that plaintiff fails to allege facts supporting a plausible inference that the conduct she alleges qualifies as "sufficiently severe or pervasive[.]" *Id.*

The Tenth Circuit has explained that "'[p]ervasiveness and severity are independent and equal grounds' upon which a plaintiff may establish this [second] element of a hostile environment claim." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008)

---

[5]      As discussed, this same standard applies to plaintiff's sex discrimination claim under the KAAD. *See Watson v. City of Topeka*, 241 F. Supp. 2d 1223, 1230 & n.10 (D. Kan. 2002) (applying Title VII analysis to KAAD hostile work environment claim and explaining that "a hostile work environment claim under Title VII or the KAAD" requires allegations "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment; and that the harassment was motivated" by sexual animus (citation and internal quotation marks omitted)).

[6]      Defendant doesn't challenge the adequacy of plaintiff's alleged facts supporting a plausible finding or inference of the first element of a sexual harassment claim.  That's likely because she has alleged that she is female and defendant subjected her to unwanted sexual harassment because of her sex. Doc. 1 at 9, 14 (Compl. ¶¶ 58, 94).  These facts suffice to allege the first element of the claim plausibly.

(alternation in original) (quoting *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998)).  But, pervasiveness and severity "'are, to a certain degree inversely related; a sufficiently severe episode may occur as rarely as once . . . , while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute.'"  *Id.* (quoting *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)).

Determining whether the workplace is an objectively hostile work environment is not "a mathematically precise test."  *Harris*, 510 U.S. at 22.  This means the court must examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* at 23.  But, when judging hostility, the court must ensure that it does not turn Title VII into a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  "[C]onduct that is merely offensive" does not violate Title VII.  *Harris*, 510 U.S. at 21.  Instead, Title VII only prohibits conduct that is "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive[.]"  *Id.*

Here, plaintiff alleges the following incidents to support her sexual harassment claims: (1) Center Manager Ashely Graf at "various times throughout 2017 and 2018 . . . touch[ed] [plaintiff] in inappropriate ways" by rubbing plaintiff's shoulders, back, and neck, Doc. 1 at 4 (Compl. ¶ 16); (2) Supervisor Nicole Bradley at "various times throughout" 2016 to 2018 "touch[ed] [plaintiff]" including "consistently rub[bing] [plaintiff's] shoulders while standing behind plaintiff, *id.* (Compl. ¶ 18); and (3) the incident on December 14, 2018, when Ms. Graf "made an unwanted sexual advance toward plaintiff" at a "company function" at a bar that

included kissing plaintiff on the lips and "sexually 'grinding' her buttocks in [plaintiff's] groin[,]" *id.* at 3–4 (Compl. ¶¶ 8–15).

Defendant tries to cabin each of plaintiff's allegations into isolated incidents that, defendant contends, can't suffice as severe or pervasive harassment. But that's not the way it works. The court must view plaintiff's allegations—particularly at the pleading stage of the case—in their totality, drawing all inferences in plaintiff's favor. *Morris*, 666 F.3d at 665 (explaining that the court considers the viability of sexual harassment claims by "[a]ddressing each allegation and considering them under a totality of the circumstance"); *see also Brooks*, 985 F.3d at 1281 (explaining on a Rule 12(b)(6) motion to dismiss the court must view plaintiff's allegations "in the light most favorable to [her], and draw all reasonable inferences from the facts" in her favor (citation omitted)).

Viewing her allegations in their totality—as the court must—plaintiff alleges conduct that is capable of supporting a plausible finding or inference of either severe or pervasive harassment. For severity, plaintiff alleges that the incident at the bar involved physical touching and kissing, even after plaintiff protested and told Ms. Graf to stop, and plaintiff alleges the conduct disgusted and humiliated her. Doc. 1 at 4 (Compl. ¶¶ 8–15). Also, plaintiff alleges physical touching in the form of shoulder, neck, and back rubbing that plaintiff protested against (at least in response to Ms. Bradley's touching) and that plaintiff found "unwanted, unwelcome and offensive." *Id.* at 4 (Compl. ¶¶ 16–19). Viewing these allegations in plaintiff's favor, they plausibly allege that the sexual harassment was severe.

For pervasiveness, plaintiff alleges the December 14, 2018 incident at the bar along with the touching by two supervisors that occurred "[a]t various times" throughout a three year period. Doc. 1 at 4 (Compl. ¶¶ 16–18). Although plaintiff doesn't quantify exactly the number

of times her supervisors touched her inappropriately, she's not required to do so.  She has alleged more than an isolated incident of harassment.  Her allegations thus support a plausible finding or inference of pervasive sexual harassment.

Defendant also supports its Motion to Dismiss by citing several cases where courts granted *summary judgment* to defendants on Title VII sexual harassment claims.  Doc. 9 at 11–14; *see also* Doc. 13 at 2–5.  In each case, the court analyzed the severity and pervasiveness of the conduct on a full summary judgment record, and concluded that the summary judgment facts couldn't support a finding or inference of conduct that was sufficiently severe or pervasive.  *See, e.g.*, *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997) (granting summary judgment against sexual harassment claim because five incidents of "unpleasant and boorish conduct" that occurred over a span of 16 months wasn't "sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive work environment"); *Jones v. Wichita State Univ.*, 528 F. Supp. 2d 1222, 1240–41 (D. Kan. 2007) (granting summary judgment where "the record support[ed] a finding that because of plaintiff's sex, perhaps twice a week over a 20-month period, [supervisor] touched plaintiff's hand when she passed objects to him" because "[n]o reasonable jury would find that [the] touching of plaintiff's hand created a workplace that was permeated with discriminatory intimidation, ridicule and insult to plaintiff, or that would constitute sexual harassment"); *McCrackin v. LabOne, Inc.*, 903 F. Supp. 1430, 1433 (D. Kan. 1995) (granting summary judgment where plaintiff alleged that supervisor "touched her shoulder at most three or four times and her back once" over a "four-month time frame" because it "could hardly be said to be pervasive conduct, such that a hostile or abusive work environment arose").

In contrast here, on a Rule 12(b)(6) motion to dismiss, plaintiff must allege enough facts—taken as true—to support a plausible inference of severe or pervasive harassment. *See Zhu v. Fed. Hous. Fin. Bd.*, 389 F. Supp. 2d 1253, 1287 (D. Kan. 2005) (holding that four alleged incidents—including two derogatory remarks—sufficed to "set out a claim on which relief may be granted" for hostile work environment); *cf. Sheets v. Sonic Indus., LLC*, No. CIV-20-01056-PRW, 2021 WL 3074188, at *2 (W.D. Okla. July 20, 2021) (recognizing that "[i]ndividually, a few stray remarks in bad taste" and other conduct "may not be sufficient to allege an objectively intolerable work environment that would compel the proverbial reasonable employee to quit[,]" but "in conjunction, and with the benefit of liberal inference afforded to plaintiffs at this early stage [on a motion to dismiss]" plaintiff's allegations "eke the accusation of constructive discharge across the line of plausibility"). At this pleading stage, plaintiff has shouldered her burden to allege plausible hostile work environment claims. Thus, the court declines to dismiss her Title VII and KAAD sexual harassment claims.

## B. Racial Harassment Claims (Counts II & VII)

*Next*, defendant argues that the court should dismiss plaintiff's racial harassment claims for three reasons: (1) plaintiff's allegations are time-barred because they occurred more than 300 days before she filed her Charge; (2) plaintiff failed to exhaust a racial harassment claim in her Charge of Discrimination; and (3) plaintiff fails to allege severe or pervasive racial harassment sufficient to support a racial harassment claim. The court just addresses defendant's second argument. It agrees with defendant that plaintiff hasn't exhausted administrative remedies for a racial harassment claim. So, the court dismisses plaintiff's Title VII and KAAD racial harassment claims.[7]

---

[7]    Defendant's motion only asks the court to dismiss plaintiff's racial harassment claims. Doc. 9 at 1, 14–21. It never asks the court to dismiss plaintiff's Title VII and KAAD race discrimination claims

Title VII contains "'a charge filing provision that specifies with precision the prerequisites that a plaintiff must satisfy before filing suit.'"[8] *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (further citation and internal quotation marks omitted)).  The charge-filing requirement generally prohibits a plaintiff from bringing "a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter."  *Id.* (citation and internal quotation marks omitted).  Failing to exhaust administrative remedies is an affirmative defense, not a jurisdictional bar to suit.  *Id.* at 1185.  Thus, the court analyzes "administrative exhaustion under a 12(b)(6), rather than the 12(b)(1) standard[.]"  *Khalifah v. Brennan*, No. 19-CV-2240-JAR-KGG, 2020 WL 1028299, at *2 (D. Kan. Mar. 3, 2020).

The exhaustion requirement serves two principal purposes:  (1) "to give notice of the alleged violation to the charged party;" and (2) "to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance."  *Smith v. Cheyenne Ret. Invs.  L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (citations and internal quotation marks omitted).  So, to promote the purposes of the exhaustion rule, a "plaintiff's claim in court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."  *Id.* (citations and internal quotation marks omitted).

---

based on her termination.  *See* Doc. 1 at 10 (Compl. ¶ 67) ("Defendant's disparate [treatment] based on race  . . . ultimately led to Plaintiff's termination."); *see also id.* at 16 (Compl. ¶ 113) (same).  Thus, the court only addresses the racial harassment claims, above.  And, plaintiff's race discrimination claims based on her termination remain in the case.

[8]      The KAAD also "require[s] plaintiff to exhaust administrative remedies before filing suit[,]" and "[t]hus a plaintiff who has failed to exhaust administrative remedies may not prosecute a civil action under KAAD[.]"  *Young v. Desco Coatings of Kan., Inc.*, 179 F.R.D. 610, 613 (D. Kan. 1998) (first citing Kan. Stat. Ann. §§ 44-1111–44-1121; then citing Kan. Stat. Ann. § 44-1010 (further citations omitted)).

Although courts "'liberally construe' the plaintiff's allegations in the EEOC charge, 'the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]'" *Id.* (quoting *Jones v. United Parcel Serv.*, 502 F.3d 1176, 1186 (10th Cir. 2007)). "The ultimate question is whether the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the EEOC charge]." *Id.* at 1164–65 (citations and internal quotation marks omitted).

Here, plaintiff's racial harassment claims don't fall within the scope of her Charge of Discrimination or the investigation that reasonably could grow out of the allegations she made in that Charge. Plaintiff's Charge of Discrimination alleged nothing about *racial* harassment. To be sure, plaintiff's Charge alleged race discrimination. She checked the box for race discrimination. Doc. 1-1 at 1. And she alleged that defendant subjected her to "disparate terms, conditions, and privileges of employment, and terminated [her] due to [her] race, African-American[.]" *Id.* at 2. But, her Charge simply contains no allegations of racial harassment. The only harassment that plaintiff's Charge alleged is sexual harassment. *See id.* at 2 (alleging that plaintiff "was subjected to *sexual* harassment, including inappropriate touching of a sexual nature" (emphasis added)). But again, the text of the Charge omits any facts or allegations that could support a racial harassment claim.

Because plaintiff's Charge fails to allege facts that reasonably would lead to an investigation of a racial harassment claim, plaintiff hasn't exhausted her administrative remedies for such a claim. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409–10 (10th Cir. 1997) (affirming dismissal of plaintiff's Title VII and KAAD hostile work environment claims for failing to exhaust administrative remedies because the "wrongful discharge allegations [contained in the charge of discrimination were] not reasonably related to the hostile

environment allegations" asserted in the lawsuit's complaint); *see also Walker v. Answer Topeka, Inc.*, No. 20-2049-EFM, 2020 WL 4200878, at *4 (D. Kan. July 21, 2020) (holding that because plaintiff's charge of discrimination never alleged that "he intended to bring a complaint for more than sex-based discrimination and retaliation[,]" he "cannot bring suit for a Title VII racial discrimination and harassment claim because he did not exhaust all administrative remedies first"); *Khalifah*, 2020 WL 1028299, at *5 (concluding that plaintiff's charge of discrimination "would reasonably lead to an investigation based on discrimination based on an injury or disability, but not one based on a protected status under Title VII for which Plaintiff now claims[,]" thus plaintiff has "not exhausted administrative remedies on her hostile work environment claim").

Plaintiff asserts that she "was pro se when she filed her administrative charge" and that her Complaint in this lawsuit "merely went into more detail of the very same allegations in her administrative charge—only she did so with the assistance of counsel." Doc. 11 at 8. The court disagrees with plaintiff's argument that the Complaint's racial harassment claims merely provide more detail about the same allegations in her Charge. As discussed, her Charge contains no allegations of racial harassment. Also, the court can't excuse plaintiff's failure to exhaust simply based on her pro se status during the administrative process. As our Circuit has recognized, the "more lenient pleading standard" for construing a charge of discrimination—*i.e.*, asking whether conduct alleged in the lawsuit would fall into the scope of the EEOC investigation that reasonably would grow out of the charge's allegations—"contemplates the fact that administrative charges of unlawful employment practices are regularly filled out by employees who do no have the benefit of counsel." *Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 667 (10th Cir. 2004). And, this more lenient pleading standard still requires that "the charge

17

must contain facts concerning the discriminatory . . . actions underlying each claim[.]" *Jones*, 502 F.3d at 1186.  As discussed, plaintiff's Charge falls short of that standard.  It simply alleges no facts about racial *harassment*, and thus plaintiff hasn't exhausted that kind of claim.

Also, plaintiff has attached the KHRC's Case Summary Report as an exhibit to her Response to defendant's Motion to Dismiss.  Doc. 11-1.  The exhibit is an 11-page report that contains a summary of the KHRC's investigative findings in response to plaintiff's Charge of Discrimination.  *See generally id.*  Plaintiff asserts that defendant "had access to the entire administrative investigation, which went into great detail about [her] claims."  Doc. 11 at 8.

Generally, the court "should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss" unless the evidence qualifies under "a limited exception" allowing the court to "consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (citation and internal quotation marks omitted).  Here, plaintiff's Complaint references her Charge of Discrimination and Notice of Right to Sue Letter.  Doc. 1 at 8–9 (Compl. ¶¶ 55–56).  It doesn't mention the KHRC's Case Summary Report so the court can't consider this document on defendant's Motion to Dismiss without converting the motion to one for summary judgment.  *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) (explaining that because "failure to exhaust is now an affirmative defense," a court's acceptance of matters outside the pleadings now requires "conversion to summary judgment . . . given that exhaustion is no longer jurisdictional").  But, even if the court could consider this report, it wouldn't help plaintiff.  Just like plaintiff's Charge, the Case Summary Report discusses her race discrimination and sexual harassment allegations but it contains no facts or claims about racial harassment.  Doc. 11-1 at 2 (explaining that

plaintiff alleged "she was subject to sexual harassment due to her sex, female, and subjected to disparate treatment and terminated due to her race, African American . . . .").

In sum, plaintiff hasn't exhausted her racial harassment claims. So, the court dismisses her Title VII and KAAD racial harassment claims.

### C.  Disability Discrimination (Counts IV & VI)

*Next*, defendant argues that the court should dismiss plaintiff's ADAAA and KAAD disability discrimination claims because she failed to exhaust administrative remedies. Like Title VII, "Title I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit." *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007); *see also Beck v. Bd. of Cnty. Comm'rs*, No. 03-2646-CM, 2004 WL 2282911, at *2 (D. Kan. May 13, 2004)  ("A plaintiff must exhaust [her] administrative remedies before bringing suit under the ADA and KAAD." (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997)). "A plaintiff's ADA claim in federal court is limited by the scope of the administrative investigation that can reasonably be expected to follow from the allegations of an administrative charge." *Lara v. Unified Sch. Dist. #501*, 350 F. App'x 280, 285 (10th Cir. 2009) (citing *Jones*, 502 F.3d at 1186).

Here, defendant argues that plaintiff failed to exhaust administrative remedies because her Charge of Discrimination lacked a sufficient factual basis to allow the EEOC to investigate disability discrimination claims or provide defendant fair notice of those claims. Defendant contends that plaintiff hasn't exhausted her disability discrimination claims in two ways.

*First*, defendant asserts that plaintiff hasn't exhausted her disability discrimination claims because her Charge contains only conclusory assertions with no factual basis to support the claims. The court disagrees with defendant's first argument. Plaintiff's Charge of

discrimination alleged that she has "a disability, a record of a disability, and was regarded as having a disability."  Doc. 1-1 at 1.  And, she alleged that defendant "terminated" her employment on "March 14, 2019" due to her "disability, [her] record of disability, [and] being regarded as having a disability[.]"  *Id.* at 2.  Although these allegations are thin, they suffice to allow the EEOC to investigate a claim of discriminatory discharge based on disability and to provide notice to defendant that plaintiff was alleging that it unlawfully had terminated her employment based on a disability.  *See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998) (concluding that plaintiff's allegations in the administrative stage "though sparse, identifie[d] the type of discrimination complained of, the alleged harasser, and an approximate time period, and thus [were] minimally sufficient to satisfy the requirements for the contents of a charge of discrimination and the purposes of the notice requirement" (first citing 42 U.S.C. § 2000e-5(b); then citing 29 C.F.R. § 1601.12(b)));  *see also Richardson v. Rusty Eck Ford, Inc.*, No. 12-1313-KHV, 2013 WL 1704930, at *7 (D. Kan. Apr. 19, 2013) (recognizing plaintiff's "charge is certainly not a model of clarity," but "it asserts—read liberally—that plaintiff's supervisors and those in charge terminated his employment because of age[,]" and thus, "the charge gave defendant notice of plaintiff's claim that [defendant] discriminated against him on the basis of his age in terminating his employment[,]" which was "was minimally sufficient to meet the fundamental purposes of an administrative submission:  to protect the employer by giving notice of the discrimination claims against it and to provide the EEOC an opportunity to conciliate the claims").[9]  That's all plaintiff had to do to exhaust her disability

---

[9]     The court disagrees with defendant's comparison of plaintiff's Charge of Discrimination here with the one at issue in *Pierson v. K.W. Brock Directories, Inc.*, No. 07-2588-CM, 2008 WL 2782755 (D. Kan. July 7, 2008).  *Pierson*'s plaintiff filed a charge that contained "a conclusory sentence and describe[d] plaintiff's [own] actions." *Id.* at *3.  It did "not contain any description of 'the action or practices complained of.'"  *Id.* (quoting 29 C.F.R. § 1601.12(b)).  Also, plaintiff did not "offer[ ] to the court any evidence that she submitted any additional information or descriptions to the EEOC."  *Id.*

discrimination claims based on her termination. *Jones*, 502 F.3d at 1186 (explaining that a charge of discrimination "liberally construe[d]" "must contain facts concerning the discriminatory and retaliatory actions underlying each claim").

But, the court agrees with defendant's *second* exhaustion argument. Defendant asserts that plaintiff failed to exhaust her administrative remedies for a failure to accommodate claim. Our Circuit has explained that an "administrative charge alleging disability discrimination alone does not automatically exhaust administrative remedies for a failure-to-accommodate claim." *Lara*, 350 F. App'x at 285 (citing *Jones*, 502 F.3d at 1187). Instead, to exhaust administrative remedies for a failure to accommodate claim, a charge of discrimination must "contain facts that would prompt an investigation of [a] claim that [the employer] failed to accommodate" the employee. *Jones*, 502 F.3d at 1187 (concluding that because "an investigation into whether [defendant] failed to accommodate [plaintiff] cannot reasonably be expected to follow the charge, he has failed to exhaust his administrative remedies with respect to this claim" (citation and internal quotation marks omitted)).

Here, plaintiff's Charge of Discrimination doesn't assert a discrimination claim based on a failure to accommodate theory. It contains no facts alleging that plaintiff requested an accommodation for a disability or that defendant ever denied her an accommodation. Without such allegations, it's not reasonable to expect that an administrative investigation into a failure to accommodate claim would follow from plaintiff's Charge of Discrimination. *See id*. Thus,

---

"Instead, after being informed by the EEOC investigator that defendant denied that plaintiff complained to management, plaintiff declined to offer any response." *Id.* Thus, Judge Murguia explained, "[w]ithout providing any additional information or descriptions of the actions at issue, the EEOC was unable to investigate effectively or to conciliate plaintiff's claims." *Id.* So, Judge Murguia concluded "that plaintiff did not exhaust her administrative remedies." *Id.* This case doesn't present the same facts. As discussed, though sparse, plaintiff's Charge of Discrimination "'describe[d] generally the action . . . complained of'"—*i.e.*, her termination—sufficient for the EEOC to investigate a discriminatory discharge claim based on disability. *Id.* (quoting 29 C.F.R. § 1601.12(b)).

plaintiff hasn't exhausted her administrative remedies for a failure to accommodate claim. *See Lara*, 350 F. App'x at 285 (affirming trial court's dismissal of failure-to-accommodate ADA claim because plaintiff "did not allege any failure to accommodate or mention his failure-to-accommodate claim in the text portion of his administrative charge"). As a consequence, the court dismisses plaintiff's disability discrimination claims premised on a failure to accommodate theory.

### D. Retaliation (Count III)

*Last*, defendant argues that plaintiff fails to state a retaliation claim for two reasons: (1) she hasn't exhaust administrative remedies for a retaliation claim; and (2) she fails to allege facts to support a plausible retaliation claim. The court addresses each argument separately, below.

#### 1. Exhaustion

Defendant asserts that plaintiff hasn't exhausted a retaliation claim premised on the protected activity of complaining about sexual harassment. Plaintiff's Complaint alleges that she "opposed and resisted her supervisor's sexual advances and told her to stop," and also "complained about the racial harassment to her supervisor." Doc. 1 at 11 (Compl. ¶¶ 71–72). Plaintiff asserts that her "opposition to and reports of discrimination constituted protected activities." *Id.* (Compl. ¶ 73). But, defendant asserts that plaintiff can't base her retaliation claim on any sexual harassment complaint because her Charge of Discrimination never alleged that she complained about sex discrimination or sexual harassment. *See generally* Doc. 1-1. Instead, plaintiff's Charge only alleges that she "made several complaints regarding the treatment" that she received compared "to similarly situated Caucasian employees." *Id.* at 2.

Plaintiff concedes that the court should dismiss her "retaliation claim, to the extent it is based on sexual harassment[.]" Doc. 11 at 11. But, she contends that her "retaliation claim that

encompasses racial discrimination must stand" because she "fully exhausted her administrative remedies." *Id.*  Because plaintiff concedes that she never exhausted a retaliation claim premised on engaging in the protected activity of opposing sexual discrimination or harassment, the court dismisses her retaliation claim to the extent it relies on a complaint based on her sex.

### 2.  Elements of a Retaliation Claim

Defendant also asks the court to dismiss plaintiff's retaliation claim premised on her race discrimination complaints because, defendant contends, plaintiff has alleged only conclusory allegations that don't state a plausible retaliation claim.  Title VII prohibits an employer from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice by" Title VII.  42 U.S.C. § 2000e-3(a).  To state a prima facie case of retaliation, a plaintiff must allege:  "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (citation and internal quotation marks omitted).

Here, plaintiff's Complaint includes factual allegations that plausibly plead all three elements of a Title VII retaliation claim.  *First*, plaintiff alleges that she engaged in protected activity by complaining to Ms. Graf about race discrimination.  Plaintiff alleges that "[r]ight before [her] termination, on or about March 5, 2019, [she] complained to Ms. Graf about the fact that management unevenly and unfairly gave more work to black employees than whites and generally treated black employees worse than white employees."  Doc. 1 at 6 (Compl. ¶ 36).  Also, plaintiff alleges that she "not only verbally complained" but also "sent a text message to Ms. Graf later that night, the evening of March 5, 2019" "to follow up on her previous

complaints of race discrimination[.]"  *Id.* at 7 (Compl. ¶¶ 37–38).  *Second*, plaintiff alleges a

challenged action that a reasonable employee would have found materially adverse.  Plaintiff

asserts that "Ms. Graf terminated [her] employment [on] March 14, 2019."  *Id.* at 7 (Compl. ¶

43); *see also Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (explaining

that "a reasonable employee would certainly find [defendant's] termination of [plaintiff] a

materially adverse action").  *Third*, plaintiff has alleged facts from which a reasonable trier of

fact could find or infer causal connection between the protected activity and the materially

adverse action.  Plaintiff alleges that Ms. Graf terminated her employment on March 14, 2019—

just nine days after she complained to Ms. Graf about race discrimination—and that Ms. Graf

"cited the language used in [plaintiff's] March 5th text as the reason for the termination."  Doc. 1

at 7 (Compl. ¶ 43).  Taking these facts as true and viewing them in plaintiff's favor, plaintiff has

alleged a plausible Title VII retaliation claim.

Defendant compares plaintiff's allegations to conclusory allegations that other courts

have dismissed for failing to state a plausible retaliation claim.  But the allegations in those cases

alleged no facts about the protected activity, the challenged action, and their purported causal

connection sufficient to state a plausible claim.  *See Khalik*, 671 F.3d at 1194 (affirming Rule

12(b)(6) dismissal of discrimination and retaliation claims where the complaint provided "no

context for when Plaintiff complained, or to whom[,]" "no allegations of similarly situated

employees who were treated differently[,]" "no facts relating to the alleged discrimination[,]"

and "no nexus between the person(s) to whom she complained and the person who fired her[,]"

but instead offered "nothing other than sheer speculation to link the [challenged actions] to a

discriminatory or retaliatory motive"); *see also Asebedo v. Kan. State Univ.*, 559 F. App'x 668,

673 (10th Cir. 2014) (affirming trial court's dismissal of retaliation claim because plaintiff's

"complaint [was] devoid of any facts that would establish a causal connection between his complaints and the allegedly retaliatory actions"); *Shahmaleki v. Kan. State Univ.*, 147 F. Supp. 3d 1239, 1246 (D. Kan. 2015) (concluding that plaintiff had "failed to provide more than 'general assertions' of retaliation" because he didn't "provide any details as to when he complained to the [Office of Civil Rights ("OCR")], how the OCR responded, or whether there was any temporal or other causal nexus between his complaint and denial of his reenrollment" (quoting *Khalik*, 671 F.3d at 1193)).

As discussed, the Complaint here alleges far more facts than the ones in defendant's cited cases. Her Complaint provides context about when and to whom she complained about racial discrimination. *See* Doc. 1 at 6–7 (Compl. ¶¶ 36–38) (describing verbal and text message complaints made to Ms. Graf). She alleges a temporal proximity between her complaints and termination. *See id.* at 6–7 (Compl. ¶¶ 36–38, 43) (alleging that she complained about race discrimination on March 5 and that Ms. Graf terminated her employment on March 14). Also, she alleges a causal nexus between her complaints and the termination by alleging that Ms. Graf "cited the language used in the March 5th text as the reason for the termination." *Id.* at 7 (Compl. ¶ 43). These allegations suffice to state a plausible Title VII retaliation claim based on plaintiff's protected activity of complaining about race discrimination. Thus, the court declines to dismiss this claim.

## IV.    Conclusion

For reasons explained, the court grants defendant's Motion to Dismiss in part and denies it in part. The court dismisses: (1) plaintiff's Title VII and KAAD racial harassment claims asserted in Counts II and V; (2) plaintiff's Title VII and KAAD disability discrimination claims that are premised on a failure to accommodate theory, as asserted in Counts IV and VI; and (3)

plaintiff's retaliation claim to the extent it is premised on the protected activity of complaining about sexual discrimination or harassment, as asserted in Count III.  But the following claims remain in the case:

- Title VII sex discrimination and hostile work environment claim (Count I)

- Title VII race discrimination claim based on plaintiff's termination (Count II)

- Title VII retaliation claim based on plaintiff's race discrimination complaints (Count III)

- ADAAA disability discrimination claim based on plaintiff's termination (Count IV)

- KAAD sex discrimination claim (Count V)

- KAAD disability discrimination claim based on plaintiff's termination (Count VI)

- KAAD race discrimination claim based on plaintiff's termination (Count VII)

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss for Failure to State a Claim (Doc. 8) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 28th day of September, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**